JOHNSON POPE BOKOR RUPPEL & BURNS, LLP
Guy M. Burns (Pro Hac Vice application to be filed)
Guyb@jpfirm.com
Scott Ilgenfritz (Pro Hac Vice application to be filed)
ScottI@jpfirm.com
401 E. Jackson St., Suite 3100
Tampa, FL 33602
Tel: (813) 225-2500 / Fax: (813) 223-7118

DIAMOND MCCARTHY LLP
Kathy Bazoian Phelps (State Bar No. 155564)
kphelps@diamondmccarthy.com
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Tel: (310) 651-2997 / Fax: (310) 278-2339

Attorneys for Plaintiffs
BURTON W. WIAND, as Receiver
EQUIALT FUND, LLC; EQUIALT FUND II, LLC;
EQUIALT FUND III, LLC; EA SIP, LLC; EQUIALT QUALIFIED
OPPORTUNITY ZONE FUND, LP; EQUIALT SECURED INCOME
PORTFOLIO REIT, INC.; and their Investors

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BURTON W. WIAND, as Receiver on behalf of EQUIALT FUND, LLC; EQUIALT FUND II, LLC; EQUIALT FUND III, LLC; EA SIP, LLC, EQUIALT QUALIFIED OPPORTUNITY ZONE FUND, LP; EQUIALT SECURED INCOME PORTFOLIO REIT, INC.; and their investors,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PAUL R. WASSGREN; FOX ROTHSCHILD LLP; and DLA PIPER LLP (US),<br><br>                    Defendants. | Case No.   2:20-cv-08849<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

This Complaint is filed by BURTON W. WIAND ("the Receiver") in his capacity as the Court-appointed Receiver for EQUIALT FUND, LLC ("Fund 1"); EQUIALT FUND II, LLC ("Fund 2"); EQUIALT FUND III, LLC ("Fund 3"); and EA SIP, LLC ("EA SIP Fund"); EQUIALT QUALIFIED OPPORTUNITY ZONE FUND, LP (QOZ Fund); and EQUIALT SECURED INCOME PORTFOLIO REIT, INC. (REIT) (collectively referred to as "The Investment Funds" or "The Funds"). The Receiver, on behalf of The Funds and their Investors, now sues Defendants PAUL R. WASSGREN ("Wassgren"); FOX ROTHSCHILD LLP ("Fox Rothschild"); and DLA PIPER LLP (US) ("DLA Piper") (collectively, "Defendants"), as set forth more fully below.

## OVERVIEW

On February 14, 2020, the United States District Court for the Middle District of Florida unsealed an emergency enforcement action filed by the Securities and Exchange Commission ("S.E.C.") against a Florida-based private real estate firm, EQUIALT LLC ("EquiAlt"), and appointed Mr. Wiand as the Receiver for various EquiAlt Defendants.  Named as Defendants in the SEC case were its CEO Brian Davison ("Davison"), Managing Director Barry Rybicki ("Rybicki"), and the first four EquiAlt Investment Funds listed above.  On August 17, 2020, the United States District Court for the Middle District of Florida expanded the Receivership to include the QOZ Fund and the REIT.

That action ("The Enforcement Action") is styled S.E.C. v. Davison et al., and is assigned Case No. 8:20-cv-00325-T-35AEP in the United States District Court for the Middle District of Florida, Tampa Division (the "Court").  The S.E.C. and the Receiver have found that The Funds were operating as a classic "Ponzi scheme."  On February 14, 2020, the Court in The Enforcement Action appointed Burton W. Wiand as the Receiver and granted him broad authority to institute actions and legal proceedings on behalf of the Funds and their Investors.  On July 1, 2020, the Court authorized the Receiver to retain the undersigned counsel to pursue claims against

Case No.                                                                                    COMPLAINT

law firms that provided services to EquiAlt and The Funds.

Wassgren, as an attorney working first at Fox Rothschild and later at DLA Piper, either was grossly negligent or he knowingly aided, abetted and conspired with EquiAlt and the "EquiAlt Insiders" (Davison, Rybicki and BR Support Services, LLC) in the creation  and perpetration of fraudulent and illegal investment scheme, by preparing inadequate security disclosure and compliance materials and other sales documents, aiding in the operation or an illegal sales program and otherwise providing legal services to EquiAlt and its principals in order to further their Ponzi scheme.

EquiAlt and the EquiAlt Insiders raised more than $170 million from at least 1,100 unsuspecting investors around the country, by selling them fraudulent, unregistered securities, and then by comingling and diverting the investors funds for improper purposes.  The Defendants knew or should have known that these unregistered securities were being issued and sold in violation of applicable securities laws and that the Fund's assets were being used for improper and fraudulent purposes.  This operation was a classic "Ponzi scheme" operation:  the promised returns on investments were inadequate, so investors were paid with the money of other, subsequent investors.  Along the way, EquiAlt and the EquiAlt Insiders enriched themselves by looting multi-millions of dollars from The Funds for things such as personal real estate, luxury cars, jewelry, jets, and the like, and by charging fees, commission and expenses that were not disclosed and were not earned.

The Receiver now seeks relief against Wassgren, Fox Rothschild and DLA Piper for their actions and participation in the fraudulent and illegal EquiAlt investment scheme.

## THE PARTIES, JURISDICTION, AND VENUE

1.    The Receiver is an attorney practicing in Tampa, Florida; on February 14, 2020, he was appointed pursuant to the Federal Court Order referenced above, giving

him the full and exclusive power, duty and authority to investigate all manner in which the affairs of the Funds were conducted and to institute actions and legal proceedings on behalf of the Funds and their Investors.

2.     Fund 1 is a Nevada limited liability company formed by Wassgren on May 23, 2011.  Fund 1 raised approximately $110 million from 733 investors from January 2011 through November 2019.

3.     Fund 2 is a Nevada limited liability company formed by Wassgren on April 24, 2013.  Fund 2 raised approximately $39 million from 266 investors from 2013 through November 2019.

4.     Fund 3 is a Nevada limited liability company formed by Wassgren on June 26, 2013.  Fund 3 raised approximately $2.6 million from investors from July 2013 through December 2015.

5.     The EA SIP Fund is a Nevada limited liability company formed by Wassgren on May 23, 2016, and it raised 21.7 million from 138 investors from April 2016 through November 2019.

6.     The QOZ fund is a Delaware Limited Partnership formed by Wassgren on August 10, 2018 and began raising money from investors thereafter.

7.     The REIT is a Maryland corporation formed by Wassgren on June 27, 2017 and began raising money from investors immediately including exchanging debentures in the earlier Funds for shares of the REIT without any proper exchange valuations taking place.

8.     Wassgren is an attorney, licensed in California and Nevada, who worked at, and was an agent of, Fox Rothschild from approximately July of 2010 through May of 2017, following which he began work as an attorney and agent for DLA Piper, where he is still employed as of the filing of this Complaint.

9.     During the period of July 2010 through May 2017, Fox Rothschild was responsible for the supervision of Wassgren and for any improper, negligent or illegal actions taken by Wassgren.

Case No.                                                                                                    COMPLAINT

10.  During the period of May 2017 through the present, DLA Piper was responsible for the supervision of Wassgren and for any improper, negligent or illegal actions taken by Wassgren.

11.  Fox Rothschild is a 900 +/- attorney law firm headquartered in Philadelphia, Pennsylvania, and it provides services from multiple offices throughout the United States, including Los Angeles, California.

12.  DLA Piper LLP (US) is a United States affiliate of a global law firm headquartered in London, the United Kingdom with approximately 4,200 attorneys; DLA Piper LLP (US) is headquartered in Baltimore, Maryland and it  provide services from multiple offices, including offices located in Los Angeles, California.

13.  Wassgren acted as the attorney for the Investment Funds and also for both EquiAlt and the EquiAlt Insiders, during the time he was employed at both Fox Rothschild and DLA Piper.

14.  The matter in controversy is in excess of $75,000; the parties are diverse, and this Court has jurisdiction pursuant to 28 U.S.C. §1332.

15.  This Court also has jurisdiction over the parties and over this cause pursuant to 28 U.S.C. §754, which provides that a duly appointed Receiver has the capacity to sue in any district.

16.  The actions of Wassgren as described in this Complaint emanated primarily from the Los Angeles offices of Fox Rothschild and DLA Piper.

### ADDITIONAL ALLEGATIONS COMMON TO ALL COUNTS

17.  Beginning in 2011 and up through and including February of 2020, The Funds were operated as a Ponzi scheme, raising more than $170 million from over 1,100 investors nationwide, through fraudulent and unregistered securities.

18.  The primary operators of this Ponzi scheme were the EquiAlt Insiders acting with the aid and assistance of Defendants.

19.  EquiAlt was the entity that issued debentures to investors, and EquiAlt was used by Davison and Rybicki as a management entity to further their fraudulent

1  scheme.

2  20.  While both Davison and Rybicki were listed as managers of EquiAlt,

3  EquiAlt was primarily under the direct day to day management of Davison, who was

4  located in Tampa, Florida.

5  21.  Davison took the lead concerning the day-to-day operation of EquiAlt and

6  The Funds, while Rybicki took the lead regarding sales and marketing efforts for the

7  solicitation of investments from the public, through BR Support Services, LLC ("BR

8  Support").

9  22.  Rybicki managed BR Support, and he acted as the head of marketing and

10  sales for The Funds, with the aid and assistance of Defendants.

11  23.  Wassgren regularly gave legal advice to and helped structure the

12  operation of both EquiAlt and BR Support, and he well knew, or should have known,

13  that both entities were operating illegally and in violation of applicable securities

14  laws and were operating as fraudulent enterprises.

15  24.  Rybicki and BR Support were based in Arizona and the sales and

16  marketing efforts for The Funds were directed by Rybicki from his office in Arizona.

17  25.  The sales of investments in The Funds were made to investors in

18  numerous states by a network of unlicensed and unregistered selling agents.

19  26.  In the Private Placement Memoranda that Wassgren drafted for The

20  Investment Funds, Investors were falsely promised that 90% of their money would

21  be used to purchase real estate.  Instead, their money was systematically looted for

22  the personal benefit and use of the EquiAlt Insiders, a fact well known to Wassgren.

23  27.  Selling compensation paid to Rybicki and/or BR Support at the rate of

24  12%, which made the 90% representation of the amount to be invested in real estate

25  a false statement.  When added to other administrative and operational costs, the 90%

26  representation only becomes more outlandish.

27  28.  Wassgren also consulted directly with Rybicki and directly with the

28  unlicensed and unregistered sales agents who were selling investments in the Funds;

Case No.                                                                                                    COMPLAINT

Wassgren advised Rybicki and these unlicensed agents in ways to attempt to disguise and mischaracterize the illegal selling fees.

29.   Wassgren, first at Fox Rothschild, and later at DLA Piper, provided legal representation and acted as counsel to EquiAlt, the EquiAlt Insiders and to the Funds for compensation; this included the drafting and revision of private placement memoranda, other sales documents, and rendering advice on regulatory compliance, selling practices, and numerous legal matters.

30.  Wassgren, through his offices at Fox Rothschild and DLA Piper, participated in the selling process by receiving and approving questionnaires and subscription documents from investors before they were issued investment securities, thus making Wassgren the gatekeeper for the fraudulent scheme to admit new investors.

31.   The Defendants, as the attorneys for The Investment Funds, owed a duty to each of The Funds to protect their respective legal interests and to assure the Funds operated in compliance with applicable laws.

32.   The interests of the EquiAlt Insiders and EquiAlt were in conflict with the interests of The Investment Funds and their Investors, and Wassgren regularly counseled the EquiAlt Insiders and EquiAlt regarding transactions that resulted in the improper payment or diversion of The Funds' assets for the benefit of EquiAlt and the EquiAlt Insiders, and their affiliated entities.

33.   The Defendants, in the course of their representation of The Investment Funds, failed to conduct an adequate due diligence investigation into the EquiAlt Insiders, EquiAlt and/or the operation of The Investment Funds.

34.   Fox Rothschild and DLA Piper owed their Investment Fund clients a fiduciary duty to provide competent legal representation and protect the interest of The Funds, and they failed in this duty.

35.   The conduct of Defendants as described in this Complaint was material and resulted in a significant loss to The Investment Funds, and their Investors.

Case No.                                                                                                            COMPLAINT

36.  By their actions and inactions, the Defendants knowingly allowed and/or aided and abetted the EquiAlt Insiders and EquiAlt in fraudulent, improper and illegal activities, thereby defrauding the Funds and its Investors.

37.  Davison and Rybicki improperly diverted money from The Investment Funds to themselves, EquiAlt, BR Services and other affiliated entities, often with the knowledge, aid and assistance of Wassgren.

38.  A legitimate investment fund usually has an audit performed by an independent certified public accounting firm in order to verify the accuracy of the books and accounts of the fund; a legitimate fund also has other checks and balances in place.  None of these financial verifications or normal checks, balances and safeguards were in place for The Investment Funds, a fact well known to Defendants.

39.  In representing the interests of The Investment Funds, Defendants should have recommended and insisted on the establishment of these checks, balances and safeguards.

40.  Defendants held themselves out as highly experienced attorneys who are experts and specialists in the legal, regulatory and customary compliance aspects of the investment fund business, and as such they should have recognized the lack of financial controls and checks and balance to be a "red flag" for fraudulent activity.

41.  The standard of care owed by and expected from expert, specialized counsel is greater than that which would be expected from an attorney without such specialized expertise.

42.  The Defendants never acquired any waivers of the multiple conflicts of interest existing between The Investment Funds, EquiAlt and the EquiAlt Insiders, and in any event, the existing conflicts of interest were unwaivable.

43.  During the course of the representation of The Investment Funds, the Defendants knew, or should have discovered, that The Funds were being illegally sold and marketed.

44.  Both Fox Rothschild and DLA Piper failed in their respective duties to

properly supervise Wassgren, and otherwise provide quality and uncompromised legal advice and legal services to The Investment Funds, in at least the following manner:

    A. Fox Rothschild and DLA Piper failed to advise and protect The Investment Funds by recommending or structuring proper checks and balances in the operation of The Funds, and by allowing EquAlt and the EquiAlt Insiders to operate The Investment Funds without the customary checks, balances and oversights routinely employed in the operation of an investment company such as The Funds;

    B. Fox Rothschild and DLA Piper failed to conduct an adequate review of the controls and practices in place for The Investment Funds;

    C. Fox Rothschild and DLA Piper were operating with irreconcilable conflicts of interest;

    D. Fox Rothschild and DLA Piper failed to have a system of supervision in place to prevent Wassgren from undertaking representation that had conflicts of interest.

    E. Fox Rothschild and DLA Piper failed to have a system of supervision in place to deter and prevent Wassgren from giving illegal advice and from aiding and abetting the fraudulent scheme described in this Complaint.

    F. Fox Rothschild and DLA Piper failed to exercise due diligence in their preparation of investment disclosure materials prepared for and utilized by EquiAlt and the EquiAlt Insiders in soliciting investments from the public; these disclosure materials contain material misrepresentations as well as omissions of material facts;

    G. Fox Rothschild and DLA Piper failed to advise The Investment Funds (and their investors) that Davison and Rybicki were selling and operating The Funds illegally; and

    H. Fox Rothschild and DLA Piper failed to advise and protect The Investment Funds from being sold through illegal solicitation

and sales activities and paying illegal compensation to unregistered brokers and dealers.

45. Additional conflicts and failings of Fox Rothschild and DLA Piper are likely to be uncovered through discovery.

46. Fox Rothschild and DLA Piper, while failing to take proper actions to protect the interests of The Investment Funds and make adequate and appropriate disclosures, charged hundreds of thousands of dollars in legal fees that were paid from The Investment Funds' money.

47. Fox Rothschild and DLA Piper did not protect the interests of its clients, The Investment Funds, but rather chose to favor the interests of EquiAlt, the EquiAlt Insiders and their affiliated entities.

48. Theft and diversion of invested money from The Investment Funds by EquiAlt and the EquiAlt Insiders could have been avoided, had Defendants done an adequate job of properly representing the interests of The Investment Funds, as they were paid to do.

49. The Investment Funds, through the appointment of the Receiver, have been cleansed of any wrongdoing otherwise imputed to The Investment Funds through the doctrine of *in pari delicto*, or any similar theory.

50. The delayed discovery doctrine, the continuing violations doctrine, and equitable tolling apply to this cause of action.

51. The facts and details outlined in this Complaint were discovered upon and after the SEC filed its enforcement order in February 2020.

52. The activities and breaches of duty by Defendants have caused multi-millions of dollars of damage to The Funds and their investors, including money stolen, improperly diverted, improperly charged as fees, commissions and in paying legal fees for which no value was received.

53. By December of 2020, investors in The Funds will be owed approximately $167 million in principal and interest; however, The Funds have

1    nowhere near sufficient assets to meet the obligations owed to the investors.

2         54.   Damages in this dispute are expected to be in excess of $100,000,000.

3         55.   The Complaint filed in the United States District Court for the Middle

4    District of Florida by the S.E.C. enumerates numerous entities designated as "Relief

5    Defendants."  These Relief Defendants were all under the ownership and/or control

6    of EquiAlt or one or more of the EquiAlt Insiders and many of them improperly

7    received funds and assets from The Investment Funds to the detriment of their

8    investors.  These Relief Defendant entities were established and formed by Wassgren

9    and he assisted, aided and abetted in many of the transactions by which money was

10   improperly diverted from The Investment Funds in favor of the Relief Defendants.

11        56.   Wassgren prepared all of the offering documents used by The Investment

12   Funds to improperly solicit investments.  These disclosure documents in the form of

13   Private Placement Memoranda (the "PPMs") were deficient in various and numerous

14   respects.

15        57.   The PPMs made misrepresentations of material fact and omitted facts

16   which were necessary in order to make an informed investment decision.  Among the

17   failure of the PPMs and the sales of The Investment Funds, are the following:

18       A. Prior to starting The Funds, both Rybicki and Davison filed for
            personal bankruptcy.  The PPMs all describe Davison and
19          Rybicki's business experience in glowing terms, and their
            previously failed business careers involving real estate and
20          mortgage financing (the business of the Funds) but the PPM
            omitted from disclosure the facts that both Davison's and
21          Rybicki's prior real estate ventures ended in personal
            bankruptcy for each of them.
22

23       B. The investments were improperly sold without either state or
24          federal securities registration.  The Funds purportedly were sold
            under a Regulation D ("Reg D") exemption from registration,
25          however, none of The Funds qualified for a Reg D exemption or
            any other exemption from registration.
26

27

28

10

C. The Funds were offered and sold as one continuous integrated offering such that the offering of all The Funds are, under the securities laws, a single offering, negating any attempt to construe or interpret the offerings as separate and distinct.

D. The Offering Memoranda for The Funds failed to disclose the nature and amount of commissions that would be paid for selling agents. The Offering Memoranda for Fund 1 states "Securities are being offered directly through the Company. No commissions of any kind will be paid to selling agents or brokers." That representation drafted by Wassgren was false and was known by Wassgren to be false. The Funds paid a 12% commission to Rybicki and/or BR, who, in turn, paid a least one-half of that commission to various unlicensed sales agents. All of this was known by Wassgren, who was often in direct contact with these unlicensed sales agents.

E. All of the PPMs use of proceeds charts show that at least 90% of the investor's money would be placed in real estate and investment assets. This was a false representation and Wassgren, who was involved in monitoring real estate transactions, knew that the acquisitions for real estate were no where near 90% of the investment funds.

F. Wassgren regularly was in contact with selling agents for The Funds. None of these selling agents were registered or licensed to sell securities and could not legally engage in the transactions of selling these securities to investors. This fact is well known to Wassgren.

G. Wassgren advised Rybicki, who was in charge of sales efforts, as well as numerous selling agents, that they were allowed to sell these investments without license or registration, in violation of securities laws.

H. Additionally, Wassgren advised Rybicki and selling agents as to methods and manners in which they could operate in order to accept commissions as "finder's fees," "seminar expenses" or other classifications that were intended to improperly avoid the securities laws licensing requirements.

I.  Wassgren designed the investments to purportedly be exempt from registration under Regulation D of the securities laws. Under Regulation D, one of the requirements for qualification is that there be no more than 35 unaccredited investors. In addition, unaccredited investors, to the extent admitted into the investment, are required to receive the heightened degree of financial disclosure. All of the investors submitted questionnaires and subscription documents to Wassgren who would review them and advise the company as to whether that investor should be accepted into The Funds. As a result, Wassgren knew the integrated funds had well in excess of 35 unaccredited investors. This process placed Wassgren in the middle of this program to illegally sell unregulated securities through unlicensed agents.

J.  It appears that in each and every instance the investor was accepted, and no investors were rejected. Well in excess of 35 investors into this continuous integrated offering were non-accredited investors thereby violating the Regulation D offering exemption. Because Wassgren was the gatekeeper for the Subscription Agreements, he well knew that the number of accredited investors had been exceeded.

K.  Additionally, Wassgren well knew that there was virtually no financial disclosure or performance track records given to investors, including the unaccredited investors thereby omitting from disclosure material and required information.

L.  Wassgren knew and omitted from any disclosures that funds would be transferred from one Fund to another to pay interest and expenses between The Funds.

M. Wassgren knew and failed to disclose that the amount of selling commission compensation that was being paid by The Funds which, in and of itself, prevented The Funds from allocating at least 90% of The Funds invested money in real estate, and that other expenses would further reduce the funds available for real estate investment.

N.  The Memoranda and disclosure documents prepared by Wassgren failed to disclose that substantial assets in The Funds were in fact being improperly diverted to, or were being used of

12

the benefit of the EquiAlt Defendants and the Relief Defendants and were not being used for legitimate Fund purposes.

O. Another restriction for Regular D offerings is they cannot be sold by a "general solicitation."

P. Defendants knew that the EquiAlt securities were being offered through a pattern of general solicitation in violation of the applicable securities laws, and they aided, abetted and participated in those general solicitations.

Q. In addition to preparing and drafting the Private Placement Memoranda, Wassgren consented to the inclusion of his name, along with the law firm Defendants, in various offering materials utilized by Davison and Rybicki to promote The Funds, and he assisted, aided and abetted the illegal sales activities.

R. In 2018, the EquiAlt Insiders, with the assistance of Wassgren, established two new Funds, the Qualified Opportunity Zone ("QOZ") and the EquiAlt Security Income Portfolio REIT ("REIT").   These funds were formed by diverting investor's money from the existing EquiAlt Funds into QOZ and REIT. The redemption of certain investors debentures from the existing Funds at full value and then reinvesting the proceeds with QOZ and the REIT constitute fraudulent transactions without sufficient disclosure and to the detriment to the existing Funds and their investors.

58.   Each of the deficiencies listed above constitute violations of both Federal and State securities laws as they also constitute a pattern of fraudulent activity perpetrated by EquiAlt and the EquiAlt Insiders, all of which was aided and abetted by Defendants.

59.   There are a myriad of federal and state laws and regulations involving the sale of securities to the public and the rendering of investment advice for a fee.  Strict compliance with these laws is required, unless the transactions, persons or activities are specifically exempted.

60.   The securities laws applicable to or implicated in the operations of The

Investment Funds and the activities of the managers of those Funds included, at least, the following:

A. <u>The Securities Act of 1933 and Its Accompanying Rules and Regulations</u>.  Compliance with this law requires that securities offered to the public, unless exempt from registration, be registered, and that there be no material misstatements or omissions in the registration documents.

B. <u>The Securities and Exchange Act of 1934 and Its Accompanying Rules and Regulations</u>.  This law requires that all offerings made to the public, including all ongoing disclosures made to the public regarding securities, must be free of material misstatements or omissions whether or not such securities are registered.

C. <u>State Securities laws</u> including those in California and the other states where The Funds were sold also require full and complete disclosure of all material facts and other material omissions.

61.   These illegal securities were continuously sold from May, 2011 through November, 2019 – a period of 8½ years.  As time went on, it is clear that the Defendants gained actual knowledge of the illegal activities of Davison, and/or should have known of them, and by failing to act, knowingly aided and abetted those fraudulent activities.

62.   An exemption to the 1933 Securities Act's registration requirements exists when an issuer can satisfy the requirements of an exemption.  In this case The Investment Funds were sold under the purported exemption of the Act's Regulation D ("Reg D"); however, under Reg D's Rule 502.c. (codified at 17 C.F.R. §230.502), a "general solicitation" of the investment in question destroys an otherwise valid 1933 Act exemption.  "General solicitation" is defined under that Reg D Rule to include any "communication published in any newspaper, magazine, or similar media….".

63.   In order to qualify for Reg D exemption, the shares or units in The

Case No.                                                                                                          COMPLAINT

Investment Funds could not be offered to the public under a general solicitation, but rather the solicitation had to be targeted, by way of private placement, only to investors who were known or believed to be accredited investors.   An accredited investor is one with certain minimum levels of income and/or net worth.   Reg D allows up to 35 non-accredited investors, provided however that no general solicitation of investors is made.

64.  With Wassgren acting as the investor's gatekeeper, the Defendants knew or should have known that The Investment Funds had been sold to more than the allowable 35 "unaccredited investors."

65.   The sale of securities to unaccredited investors, even if such securities are otherwise exempt from registration, triggers a requirement that investors be furnished with audited or other full and complete financial statements.   Even if a Reg D exemption had been available to The Funds, the financial disclosure requirements of the 1933 Securities Act were required to be met, because The Funds were being offered and sold to many non-accredited investors.

66.  The Investment Funds were sold as purported "private placements" but in fact the sale of the securities was conducted as a general public solicitation with the use of advertisements and solicitation practices prohibited in private placements, all of which was well known to Defendants.

67.  The Defendants knew, or should have known, that The Funds would legally be treated as "integrated," meaning that the investment funds were one continuous offering.

68.  Wassgren regularly improperly counseled and advised EquiAlt and the EquiAlt Insiders that the unlicensed and unregistered sales force selling The Investment Funds could legally be treated as "finders" and thereby avoid the necessity of obtaining legal licenses for the sale of securities.

69.  The combination of these sales practices, that were approved by Wassgren and in which he participated, constitute a pattern and practice of selling

investment securities in violation of applicable securities laws and regulations.

70.   The lack of adequate financial statements over an 8½ year period should have put Defendants on notice that the performance of the Funds was unreliable, which is in itself a disclosure requirement.

71.   The provisions of the Securities and Exchange Act of 1934 require that no misstatements of material fact, and no omissions of any necessary facts, be made in conjunction with the sale of securities, whether or not those securities are entitled to any registration exemption.

72.   The Defendants knew or should have known that misstatements and omissions of material fact had been made in the offering documents they prepared and those misstatements and omissions were continuing to be made in conjunction with the past and ongoing sales of The Funds; the Defendants knowingly aided and abetted EquiAlt and the EquiAlt Insiders in these continuing violations, by failing to alert any of the shareholders or appropriate authorities as to these ongoing activities, and by continuing to assist, aid and abet the ongoing investments into The Funds.

73.   The securities law violations set forth in this Complaint are evidence of Defendants willful, intentional or grossly negligent conduct and participation the fraudulent EquiAlt scheme.

74.   All conditions precedent have occurred, or been satisfied or waived.

75.   The Receiver reserves the right to amend this Complaint as appropriate.

## COUNT I

## Breach of Fiduciary Duty

76.   All prior allegations are realleged and incorporated by reference.

77.   Wassgren, Fox Rothschild and DLA Piper, as the attorneys for each of The Investment Funds, owed a continuing fiduciary duty to each Fund.

78.   This fiduciary duty required the Defendants to act in the best interest of The Funds.

79.   The Defendants also represented EquiAlt and the EquiAlt Insiders,

creating an ongoing conflict of interest.

80. The Defendants breached the fiduciary duties they owed to The Investment Funds.

81. As a result of those fiduciary duty breaches, each of The Investment Funds and their Investors have been damaged.

82. The actions of the Defendants in breaching their fiduciary duty to each of The Investment Funds was intentional or grossly negligent.

WHEREFORE, the named Plaintiffs herein respectfully request judgment against the Defendants for damages, punitive damages, prejudgment interest, attorneys' fees, the costs of this action, and such other and further relief this Court deems appropriate.

## COUNT II

### Negligence/Gross Negligence/Professional Malpractice

83. All allegations prior to Count I are realleged and incorporated by reference.

84. Wassgren, Fox Rothschild and DLA Piper were attorneys employed by The Investment Funds, for compensation.

85. The Defendants owed but neglected their reasonable professional duties and responsibilities owed to The Investment Funds.

86. The Defendants, as attorneys for the Funds, had unavoidable conflicts of interest because they also represented the EquiAlt Insiders and EquiAlt.

87. The conduct described above fell below the standard of care expected from independent and experienced counsel.

88. The Defendants breached the duties it owed to The Investment Funds of Investors and committed negligence, gross negligence and/or malpractice, and proximately caused damage to The Investment Funds and its Investors.

89. The Defendants' actions constituted gross negligence.

WHEREFORE, the Plaintiffs request judgment against Defendants for

17

1  damages, punitive damages, prejudgment interest, attorneys' fees, the costs of this

2  action, and such other and further relief this Court deems appropriate.

3  **COUNT III**

4  **Common Law Aiding and Abetting of Fraud**

5  90.  All allegations prior to Count I are realleged and are incorporated herein

6  by reference.

7  91.  There existed an underlying fraud in the sale of investments in the Funds,

8  and in the operation of the Funds.

9  92.  The Defendants knew that EquiAlt and the EquiAlt Insiders actions,

10  activities and operations violated the securities laws.

11  93.  The actions of Equialt and the EquiAlt Insiders constituted an ongoing

12  fraudulent investment scheme.

13  94.  The Defendants knew they had irreconcilable conflicts of interest and

14  intentionally chose to ignore those conflicts and to render legal advice and assistance

15  that knowingly aided and abetted EquiAlt and the EquiAlt Insiders in continuing

16  their fraudulent scheme.

17  95.  The Defendants gave substantial assistance to EquiAlt and the EquiAlt

18  Insiders in the advancement and commission of their fraud relating to The

19  Investment Funds.

20  96.  In exchange for aiding and turning a blind eye to the fraudulent activities

21  of EquiAlt and the EquiAlt Insiders, the Defendants received hundreds of thousands

22  of dollars in fees.

23  97.  The Defendants' conduct allowed, and knowingly aided and abetted

24  EquiAlt and the EquiAlt Insiders in committing and continuing their fraudulent

25  scheme, all to the detriment of The Investment Funds and their Investors.

26  WHEREFORE, the Plaintiffs request judgment against Defendants for

27  damages, prejudgment interest, punitive damages, attorneys' fees, the costs of this

28  action, and such other and further relief this Court deems appropriate.

Case No.                                                                    COMPLAINT

## COUNT IV

## Common Law Aiding and Abetting of Breach of Fiduciary Duty

98.   All allegations prior to Count I are realleged and are incorporated by reference.

99.   EquiAlt and each of the EquiAlt Insiders owed a fiduciary duty to The Investment Funds and their Investors.

100. EquiAlt and the EquiAlt Insiders breached their fiduciary duties to the Funds and their Investors.

101. The Defendants knew EquiAlt and the EquiAlt Insiders owed fiduciary duties to The Investment Funds and their investors.

102. The Defendants knew or should have known that EquAlt and the EquiAlt Insiders were operating in a manner that breached their fiduciary duties to The Investment Funds.

103. The Defendants gave substantial aid and assistance to EquiAlt and the EquiAlt Insiders in the furtherance of their continued breach of fiduciary duties.

104. The Defendants knew that it had conflicts of interest and intentionally chose to ignore those conflicts and to render legal advice and assistance that knowingly aided and abetted EquiAlt and the EquiAlt Insiders in continuing this fraudulent scheme, and in exchange for aiding and turning a blind eye to EquiAlt and the EquiAlt Insiders' activities, the Defendants received hundreds of thousands of dollars in legal fees.

105. The Defendants' substantial assistance to EquiAlt and the EquiAlt Insiders knowingly aided and abetted their fraudulent scheme, to the detriment of The Investment Funds and their Investors.

WHEREFORE, the Plaintiffs request judgment against Defendants for damages, prejudgment interest, attorneys' fees, the costs of this action, and such other and further relief this Court deems appropriate.

1

## DEMAND FOR JURY TRIAL

2       Plaintiffs demand trial by jury on all issues so triable.

3

4   Dated:  September 25, 2020            DIAMOND MCCARTHY LLP

5
                                         */s/ Kathy Bazoian Phelps*
6
                                         _____
7                                        Kathy Bazoian Phelps
8                                        333 S. Hope St., Suite 4050
                                         Los Angeles, CA 90071
9                                        Telephone: (424) 278-2335

10

11                                       JOHNSON POPE BOKOR RUPPEL &
                                         BURNS, LLP
12

13                                       _____
14                                       Guy M. Burns
                                         Fla. Bar No. 160901
15                                       (Pro Hac Vice to be applied for)
                                         Scott Ilgenfritz
16                                       Fla Bar No. 394084
17                                       (Pro Hac Vice to be applied for)
                                         401 E. Jackson St., Suite 3100
18                                       Tampa, FL  33602
19                                       Telephone: (813) 225-2500

20                                       Attorneys for Plaintiffs
21

22

23

24

25

26

27

28

20