1 Heather L. Rosing (SBN 183986)
hrosing@klinedinstlaw.com
2 Daniel S. Agle (SBN 251090)
dagle@klinedinstlaw.com
3 KLINEDINST PC
501 W. Broadway, Suite 600
4 San Diego, CA 92101
Tel: (619) 239-8131
5
6 *Attorneys for Defendant DLA Piper
LLP (US)*
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| BURTON W. WIAND, as Receiver on behalf of EQUIALT FUND, LLC; EQUIALT FUND II, LLC; EQUIALT FUND III, LLC; EA SIP, LLC; EQUIALT QUALIFIED OPPORTUNITY ZONE FUND, LP; EQUIALT SECURED INCOME PORTFOLIO REIT, INC.; and their investors<br><br>*Plaintiffs*,<br><br>vs.<br><br>PAUL R. WASSGREN; FOX ROTHSCHILD LLP; AND DLA PIPER LLP (US),<br>*Defendants*. | Case No. 2:20-cv-08849-AB-PVC<br><br>**DECLARATION OF MARK S. GURLEY IN SUPPORT OF DLA PIPER LLP (US)'S MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>Hearing Date: February 26, 2021<br>Time: 10:00 a.m.<br>Place: Courtroom 7B<br>Judge: Hon. André Birotte Jr. |

I, Mark S. Gurley, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and am competent to make the following declaration:

1.       I am the Director of Operations in the Office of General Counsel at DLA Piper LLP (US) ("DLA").   I understand that I am submitting this declaration in connection with DLA's memorandum in support of its motion to compel arbitration of the Plaintiffs' claims against DLA in the above-captioned case.  I have personal knowledge of the facts set forth herein, and they are true and correct to the best of my knowledge.  If called, I would testify to these facts under oath.

2.       DLA is a limited liability partnership with its headquarters in Baltimore, Maryland.

3.       Paul Wassgren practiced as a partner at DLA's Los Angeles office from May 2017 through November 30, 2020.

4.       Exhibit A is a true and correct copy of the engagement agreement, dated May 19, 2017, EquiAlt LLC executed with DLA for representation in connection with general corporate matters.

5.       Exhibit B is a true and correct copy of the engagement agreement, dated August 7, 2018, EquiAlt LLC executed with DLA pertaining to the formation of a Qualified Opportunity Fund.

6.       According to DLA's records, DLA has never been separately engaged by EquiAlt Fund LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, EA SIP, LLC; EquiAlt Qualified Opportunity Zone Fund, LP, or EquiAlt Secured Income Portfolio REIT, Inc. (collectively, "the Investment Funds") to provide legal services.

7.       DLA does not have any separate engagement agreements with the Investment Funds.

8.       All legal services DLA provided to EquiAlt LLC or its affiliates (including the Investment Funds) were provided pursuant to EquiAlt LLC's engagement agreements with DLA.

9.      All invoices for legal services that DLA provided to EquiAlt LLC or its affiliates (including the Investment Funds) were addressed to EquiAlt LLC and were sent pursuant to EquiAlt LLC's engagement agreements with DLA.

10.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of January, 2021, in Baltimore, MD.

MARK S. GURLEY

# Exhibit A



**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California  90067-4704
www.dlapiper.com

Paul R. Wassgren
paul.wassgren@dlapiper.com
**T**  310.595.3035
**F**  310.595.3335

May 19, 2017

*VIA E-MAIL*

Mr. Brian Davison
Chief Executive Officer
EquiAlt LLC
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145

**Re:     Engagement and Conflict Waiver Letter for Legal Services**

Dear Brian:

We are pleased that EquiAlt LLC (the "Company" or "you") is engaging DLA Piper LLP (US) ("DLA Piper," "we," or the "Firm") to represent it in connection with general corporate matters (the "Matter").

**General Terms**

The terms and conditions set forth in the Terms of Service are incorporated herein with the exception of any terms and conditions herein that differ from those in the Terms of Service.  Where the terms and conditions differ, this letter shall control.

I will be responsible for and actively involved in the Matter.  Additional lawyers, including those in other practice areas, will be added to the Matter on an as-needed basis.  Any significant additions to staffing will be discussed with you in advance.

**Fees and Expenses**

The Firm's fees will be based on the time involved in the Matter and our internal time charges.  My standard hourly fee is $725.00.  As part of the Firm's ordinary business practices, hourly time charges are reviewed annually, and may be revised for work beginning in January.

We will submit statements for services rendered for payment on a monthly basis.  Payment is due thirty (30) days following the invoice date.  We reserve the right to assess and collect late payment charges at the rate of 10% per year on past due accounts.

In addition, our billing statements will include charges and disbursements incurred by us in the course of providing services.  These items will be billed in accordance with our standard practice, as described in the attached summary, which may be periodically updated.

**Arbitration of Fee Disputes**

If a dispute arises about our fees, you may be entitled under California Business and Professions Code Sections 6200 - 6206 to arbitration of the dispute.



Mr. Brian Davison
May 19, 2017
Page Two

If the terms of this letter are satisfactory, please sign the consent form below and return it to me.  You may wish to review this letter with independent counsel.  In the event that you do not sign the letter and return it within ten (10) days from the date of this letter, your instructing us or continuing to instruct us on a particular matter will constitute your full acceptance of the terms set out in this letter.

Very truly yours,

**DLA Piper LLP (US)**

Paul R. Wassgren
Partner

Admitted in California and Nevada

PRW:ebr



Mr. Brian Davison
May 19, 2017
Page Three

I have read the above engagement and conflict waiver letter and agree and accept the terms and conditions set forth therein.

Date:

**EQUIALT LLC**

By: _____
Brian Davison

Its: _BRIAN DAVISON_
Chief Executive Officer



Mr. Brian Davison
May 19, 2017
Page Four

**DLA Piper LLP (US)**
Client-Reimbursable Expenses and Other Charges
*Effective January 1, 2014*

DLA Piper LLP (US) bills clients for reasonable charges and disbursements incurred in connection with a matter. Clients are billed for disbursements based on the actual cost billed by the vendor or, as noted below, at rates below or comparable to outside vendor charges.

I.      **Research Services.**  Charges for computerized research services are billed at levels below that which would be charged for individual usage on a particular engagement.  Services for which the Firm negotiates discount rates are billed at the discounted rate.

II.     **Duplication and Electronic Document Management.**   Photocopying services (including copying, collating, tabbing and binding) performed in-house are charged at $0.15 per page.  Color photocopies or prints are charged at $1.25 per page.  Photocopying projects performed by outside vendors are billed at the actual invoice amount.

Electronic Data Management services (e.g., scanning, CD/DVD creation, file conversion) performed by outside vendors are billed at the actual invoice amount.

III.    **Travel Expenses**.       Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel.  Corporate and/or negotiated discounted rates are passed on to the client.  Certain retrospective rebates may not be passed along.  We charge coach fares for domestic flights and business class for international flights unless the client has approved first-class or an upgrade.

IV.     **Postage and Courier Services.** Outside messenger and express courier services are charged at the actual vendor invoice amount.  The Firm negotiates, uses, and passes along volume discount rates whenever practicable.  Where the Firm uses in-house messengers, there is a standard transaction charge.

V.      **Direct Payment by Clients of Other Disbursements.**  Other major disbursements incurred in connection with a matter will be paid directly by the client.  Examples of such major disbursements that clients will pay directly include:

*Professional Fees* (including disbursements for local counsel, accountants, witnesses and other professionals)

*Filing/Court Fees* (including disbursements for agency fees for filing documents, standard witness fees, juror fees)

*Transcription Fees* (including disbursements for outside transcribing agencies and deposition/courtroom stenographer transcripts)

*Other Disbursements* (including any other required out-of-pocket expenses incurred for the successful completion of the matter)



# TERMS OF SERVICE

## 1.   INTRODUCTION

These Terms of Service set forth the terms and conditions under which DLA Piper LLP (US) ("the Firm") will act as your counsel for all existing and future matters (collectively, the "Engagement").

The Firm has issued or will issue an engagement letter, setting forth the scope of the representation, the fee agreement, and other matter-specific terms ("Engagement Letter"). These Terms of Service should be read and understood in conjunction with the Engagement Letter. The Terms of Service and Engagement Letter are collectively referred to as "the Engagement Terms." Where there is any inconsistency between these Terms of Service and the Engagement Letter, the latter will control.

The Terms of Service supersede all prior agreements between you and the Firm with respect to the Engagement.  The Terms of Service can only be altered or amended by a writing signed by both you and the Firm.

The words "you" and "your" refer to the client(s) specified in the relevant engagement letter. The words "we," "us" and "our" refer to the Firm.

## 2.   CLIENT(S) REPRESENTED

You agree and acknowledge that the Firm's representation of you does not create an attorney-client relationship with any other entity or person, including without limitation, your corporate parents, subsidiaries, affiliates, other entities owned, in whole or in part by you, entities that hold direct or indirect interests in you, or any of your directors, officers, stockholders, employees, or agents, unless such entities or persons are specifically named in the Engagement Letter.

In representing corporations, we may provide information or advice to directors, officers, or employees in their corporate capacities. The provision of such information or advice does not create an attorney-client relationship between us

and the individual(s) other than in their corporate capacities.

In representing partnerships, we may provide information or advice to partners, officers or employees in their capacities as your representatives.  The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their representative capacities.

In representing limited liability companies, we may provide information or advice to members, officers or employees in their capacities as your representatives.  The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their representative capacities.

In the event that you are acquired or are otherwise subject to a change in control (including by a person or group becoming a controlling affiliate of yours) after the inception of the Engagement, it is understood that the Firm does not represent the acquiring entity or such controlling affiliate or establish an attorney-client relationship with such entities or affiliates.

The Firm's representation of an association or trade group does not create an attorney-client relationship with any of the association or trade group's constituents, members, affiliates or participants individually.

## 3.   COUNSEL GUIDELINES

You agree and acknowledge that the Engagement Terms shall control over terms contained in your outside counsel guidelines or similar instructions supplied by you at any time.

## 4.   CONFLICTS OF INTEREST

The Firm and its affiliated entities represent clients in a broad range of industries and in a wide variety of legal matters, nationally and internationally.  Absent an effective conflict of interest waiver, conflicts of interest could arise



that could deprive you or other clients of the right to select the Firm as their counsel, and preclude us from representing you or other clients in ongoing or future matters. In undertaking the Engagement, the Firm wants to be fair to you and to our other clients. Accordingly, you acknowledge and agree that the Firm and its affiliated entities may, now or in the future, represent other persons or entities on matters adverse to you or any of your current or future affiliates, including, without limitation, in commercial transactions, auctions, mergers and acquisitions, intellectual property matters, restructuring or bankruptcy matters, litigation, arbitration or other dispute resolution procedure, other than those for which the Firm had been or is then engaged by you. Such matters shall be referred to as "Allowed Adverse Representation." You understand that the foregoing examples are illustrative, not exhaustive.

You agree that you will not, for yourself, or any other entity or person, assert the Firm's representation of you or any of its current or future affiliates as a basis for disqualifying the Firm from representing another party in an Allowed Adverse Representation. You further agree that an Allowed Adverse Representation does not breach any duty that the Firm owes to you or any of your affiliates. You may consult with independent counsel regarding this section before agreeing to it.

You agree that this section does not expand the scope of the Engagement to encompass your affiliates unless expressly agreed by the Firm.

## 5.    CONFIDENTIALITY

The Firm has a professional obligation not to disclose your confidential information or to use it for another party's benefit without your consent. These obligations are subject to certain exceptions, including laws and regulations relating to money laundering and terrorist financing. Under certain circumstances, the Firm may be obligated to disclose information to governmental authorities, and we may be prohibited from informing you that disclosure has been made or the reasons for such disclosure. We may have to cease work for you for a period of time and not be able to inform you of the

reason. Provided that the Firm acts consistent with its duty of confidentiality, subject to the exceptions noted in this section and those set forth in the applicable Rules of Professional Conduct, you agree that you shall not assert that the Firm's possession of such confidential information is a basis for disqualifying the Firm from representing another of its clients in any matter in which you have an interest, or that it constitutes a breach of any duty owed by the Firm, even though the information may relate to a matter in which the Firm is representing another client or may be known to someone at the Firm working on the matter.

If the Firm receives a subpoena or request for information that is within our custody or control, or the custody or control of our agents or representatives, we will, to the extent permitted by applicable law, advise you before responding so that you have the opportunity to intervene or assert any objections. Should you object to the production of such information, the Firm may provide such information only to the extent authorized by you or required by a court or governmental body of competent jurisdiction. You agree to pay the Firm for services rendered and charges and disbursements incurred in responding to any such request for information at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

You consent and agree that the Firm may disclose the fact of the Engagement and related general information to the extent that such disclosure does not convey any confidential and or non-public information and is not adverse to your interests.

## 6.    ARBITRATION OF DISPUTES

Any dispute or claim between you and the Firm arising out of or relating to the Engagement Terms or their breach, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud and disputes regarding attorney fees and/or costs charged under this Agreement (except to the extent provided below) shall be submitted to binding arbitration before the American Arbitration Association, and subject to the Commercial



Arbitration Rules.  This provision shall not apply to any ethics or disciplinary proceedings against the Firm.  The parties shall bear their own legal fees and costs for all claims.

You acknowledge that by agreeing to this Arbitration provision, you are giving up the right to litigate claims against the Firm, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision.  You acknowledge that you have read and understand this arbitration provision, and that you voluntarily agree to binding arbitration.

**NOTE:** You are entitled to consult an independent lawyer to review this arbitration provision before agreeing to it.  By accepting these Engagement Terms, you acknowledge that you have consulted with independent counsel, or if not, that you had the opportunity to do so.

### 7.    CLIENT IDENTIFICATION

Many jurisdictions have adopted or are in the process of changing or creating anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws.  As part of the Firm's responsibility for compliance with such laws, rules, regulations or policies, the Firm is obliged to take detailed steps to verify the identity of our clients and sources of payment.  Accordingly, prior to commencement of work, the Firm will have already requested, or will be requesting shortly, that you provide us with required identification documents.  A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the matter.  It is also necessary for us to reserve the right to request additional information believed necessary, advisable or appropriate to verify identity and/or to ensure the Firm's compliance with applicable laws, rules, regulations, best practices and anti-money laundering matters from time to time.

### 8.    DATA TRANSFER CONSENT

Due to legal obligations applicable to the Firm or our affiliated offices, and to efficiently maintain

information provided to us, the Firm may transfer some or all of any personal or other data and information ("Data") that you provide to the Firm to one or more DLA Piper offices in other countries that may not be subject to data protection laws similar to those in the jurisdiction in which the Data is first received.  By signing this letter, you give us specific consent to obtain and transfer such Data, and confirm that you have obtained and grant us all required consents to allow the Firm to do so.

### 9.    TERMINATION

Either of us may terminate the Firm's representation of you in a particular ongoing matter, or in the Engagement, at any time.  Unless otherwise terminated by you or the Firm, our representation of you with respect to a particular matter will terminate upon conclusion of the Firm's active involvement in the matter (even if the Firm continues active involvement in other matters on your behalf).  Upon termination, we will have no further duty to inform you of future developments or changes in law as may be relevant to such matter.  Further, unless you and the Firm mutually agree in writing to the contrary, we will have no obligation to monitor renewal, expiration, or notice dates or similar deadlines which may arise from the matters for which we had been retained.

If, at any time, our engagement is limited to a specific matter, and at the time such matter is completed, we are not representing you in any other matters, our attorney-client relationship will be deemed terminated whether or not we send you a letter to confirm such termination.  Thereafter, if you and the Firm mutually agree to engage on a matter or matters, these Terms of Service (and any applicable Engagement Letter) would then become effective.

If permission for withdrawal is required by a court, we shall apply promptly for such permission and termination shall coincide with the court order for withdrawal.



## 10.   CLIENT FILES AND RECORDS RETENTION/DISPOSAL

The Firm maintains physical files relating to the matter(s) in which we represent you.  These may contain materials received from you and other materials, including correspondence, memos, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to our representation of you (the "Client File").  The Client File is your property.  We may also place in the files documents containing our attorney work product, mental impressions or notes, and drafts of documents ("Work Product").  You agree that Work Product shall be and remain our property.  In addition, electronic records (except those to be provided to you at the conclusion of the matter, as described below) such as e-mail and documents prepared on our word processing and document management system shall not be considered part of your Client File unless it has been printed and the hard copy has been placed in your physical file. You agree that we may adopt and implement reasonable retention policies for such electronic records and that we may store or delete such records in our discretion.

At the conclusion of a matter (which is defined as the time that our work on any matter subject to the Engagement Terms has been completed), you have the right to take possession of the original of your Client File (not including Work Product).  We will be entitled to make and retain physical or electronic copies of all or part of the Client File, at our own discretion and expense.

If you do not take possession of the Client File at the conclusion of a matter, the Firm will store the file at its expense for a period of seven (7) years. Our retention of the Client File shall not constitute or be deemed to indicate the existence of an ongoing attorney-client relationship.  Thereafter, unless we receive written instructions from you to the contrary, the Firm will destroy the Client File, consistent with maintaining confidentiality, without further notice or obligation to you.

## 11.   CONSULTATION WITH COUNSEL

We may consult with our own counsel, whether outside counsel or attorneys inside the Firm who do not perform work for you on the matter, regarding our representation of you.  These consultations may be on our own behalf and will not be charged to you.  To the extent that we are addressing the Firm's own rights or responsibilities regarding the matter, a conflict of interest might be deemed to exist between the Firm and you.  You hereby consent to such consultation, and waive any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent you or from acting on our own behalf, even if doing so might be deemed adverse to your interests. You acknowledge that the communications related to the consultations are protected by the Firm's own attorney-client privilege from disclosure to you.

## 12.   SEVERABILITY

If any provision of the Engagement Terms is held invalid or unenforceable by any court or arbitrator of competent jurisdiction, the other provisions of the Engagement Terms shall remain in full force and effect. Any provision of the Engagement Terms held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.  Our waiver of any of the Engagement Terms shall not be deemed a further or continuing waiver of such term or any other term, unless specifically stated.

# Exhibit B



**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4701
www.dlapiper.com

Paul R. Wassgren
paul.wassgren@dlapiper.com
**T** 310.595.3035
**F** 310.595.3335

August 7, 2018

*VIA EMAIL:* BRIAN@EQUIALT.COM

Mr. Brian Davison
Chief Executive Officer
EquiAlt LLC
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145

Re:     Engagement and Conflict Waiver Letter for Legal Services

Dear Brian:

We are pleased that EquiAlt LLC (the "Client" or "you") is engaging DLA Piper LLP (US) ("DLA Piper,"
"we," or the "Firm") to represent it in connection with the Formation of a Qualified Opportunity Fund (the
"Matter").

**General Terms**

The terms and conditions set forth in the Terms of Service accompanying this letter are incorporated
herein with the exception of any terms and conditions herein that differ from those in the Terms of
Service. Where the terms and conditions differ, this letter shall control.

I will be responsible for and actively involved in the Matter. Additional lawyers, including those in other
practice areas such as Tax, will be added to the Matter on an as-needed basis. In this regard, we
anticipate that Warren "Skip" Kessler and Michael Wiener will be involved as well. Any significant
additions to staffing will be discussed with you in advance.

**Fees and Expenses**

The Firm's fees will be based on the time involved in the Matter and our internal time charges. My
standard hourly fee is $785. As part of the Firm's ordinary business practices, hourly time charges are
reviewed annually, and may be revised for work beginning in January.

We will submit statements for services rendered for payment on a monthly basis. Payment is due thirty
(30) days following the invoice date. We reserve the right to assess and collect late payment charges at
the rate of 10% per year on past due accounts.

In addition, our billing statements will include charges and disbursements incurred by us in the course of
providing services. These items will be billed in accordance with our standard practice, as described in
the attached summary, which may be periodically updated.

WEST\282644849.1



Brian Davison
August 7, 2018
Page Two

**Arbitration of Fee Disputes**

If a dispute arises about our fees, you may be entitled under California Business and Professions Code Sections 6200 - 6206 to arbitration of the dispute.

If the terms of this letter are satisfactory, please sign the consent form below and return it to me. [You may wish to review this letter with independent counsel.] In the event that you do not sign the letter and return it within ten (10) days from the date of this letter, please note that your instructing us or continuing to instruct us on a particular matter will constitute your full acceptance of the terms set out in this letter.

Very truly yours,

**DLA Piper LLP (US)**

Paul R. Wassgren
Partner

Admitted in California and Nevada



Brian Davison
August 7, 2018
Page Three

I have read the above engagement and conflict waiver letter and agree and accept the terms and
conditions set forth therein.

Date:

EQUIALT LLC

By: _____

Its: _____Manager / CEO_____



DLA Piper LLP (US)
Client-Reimbursable Expenses and Other Charges
*Effective January 1, 2017*

DLA Piper LLP (US) bills clients for reasonable charges and disbursements incurred in connection with a matter. Clients are billed for disbursements based on the actual cost billed by the vendor or, as noted below, at rates below or comparable to outside vendor charges.

    I.     **Research Services.** The Firm has built digital libraries which enable lawyers to perform many research functions without incurring any additional expenses. These functions include pulling cases, court filings and law reviews and reading treatises in digital format. Only complex research requiring the use of Lexis or Westlaw initiates an additional cost to the client. The Firm has negotiated substantial discounts for such services which are passed on to clients at cost.

    II.    **Duplication.**     Photocopying services (including copying, collating, tabbing and binding) performed in-house are charged at $0.15 per page. Color photocopies or prints are charged at $.95 per page. Photocopying projects performed by outside vendors are billed at the actual invoice amount.

    III.    **Electronic Data/Document Management.** Electronic Data obtained from the client will be processed (e.g., scanning, CD/DVD creation, file conversion) by the Firm's Litigation Support staff and billed at the current Firm rates, or other client negotiated rates. Should the client direct that the work be performed by an outside third party, the cost to the client is the actual invoice amount and will be billed directly by the third party to the client (per section VI below).

Hosting of electronic data internally by the Firm, in excess of 10 gigabytes, will be billed at $18 per gigabyte per month. If directed by the client that data hosting be performed by an outside third party, the cost to the client is the actual invoice amount and will be billed directly by the third party to the client (per section VI below).

    IV.    **Travel Expenses.** Travel expenses are billed at actual cost and include air or rail travel, mileage, lodging, meals, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel. Corporate and/or negotiated discounted rates are passed on to the client. Certain retrospective rebates may not be passed along.

    V.    **Postage and Courier Services.** Outside messenger and express courier services are charged at the actual vendor invoice amount. The Firm negotiates, uses, and passes along volume discount rates whenever practicable. Where the Firm uses in-house messengers, there is a standard transaction charge.

    VI.    **Direct Payment by Clients of Other Disbursements.** Major disbursements incurred in connection with a matter will be paid directly by the client. Examples of such major disbursements that clients will pay directly include:

*Professional Fees* (including disbursements for local counsel, accountants, witnesses and other professionals)

*Filing/Court Fees* (including disbursements for agency fees for filing documents, standard witness fees, juror fees)



*Transcription Fees* (including disbursements for outside transcribing agencies and deposition/courtroom stenographer transcripts)

*Other Disbursements* (including third party services, e.g. hosting of client data, litigation support/eDiscovery services, etc., and other required out-of-pocket expenses incurred for the successful completion of the matter)



**TERMS OF SERVICE**

### 1 .    INTRODUCTION

These Terms of Service set forth the terms and
conditions under which DLA Piper LLP (US) ("the
Firm") will act as your counsel for all existing and
future matters (collectively, the "Engagement").

The Firm has issued or will issue an engagement
letter, setting forth the scope of the
representation, the fee agreement, and other
matter-specific terms ("Engagement Letter").
These Terms of Service should be read and
understood in conjunction with the Engagement
Letter. The Terms of Service and Engagement
Letter are collectively referred to as "the
Engagement Terms." Where there is any
inconsistency between these Terms of Service
and the Engagement Letter, the latter will control.

The Terms of Service supersede all prior
agreements between you and the Firm with
respect to the Engagement.  The Terms of
Service can only be altered or amended by a
writing signed by both you and the Firm.

The words "you" and "your" refer to the client(s)
specified in the relevant engagement letter. The
words "we," "us" and "our" refer to the Firm.

### 2 .    CLIENT(S) REPRESENTED

You agree and acknowledge that the Firm's
representation of you does not create an attorney-
client relationship with any other entity or person,
including without limitation, your corporate
parents, subsidiaries, affiliates, other entities
owned, in whole or in part by you, entities that
hold direct or indirect interests in you, or any of
your directors, officers, stockholders, employees,
or agents, unless such entities or persons are
specifically named in the Engagement Letter.

In representing corporations, we may provide
information or advice to directors, officers, or
employees in their corporate capacities.  The
provision of such information or advice does not
create an attorney-client relationship between us
and the individual(s) other than in their corporate
capacities.

In representing partnerships, we may provide
information or advice to partners, officers or
employees in their capacities as your
representatives.  The provision of such
information or advice does not create an attorney-
client relationship between us and the
individual(s) other than in their representative
capacities.

In representing limited liability companies, we may
provide information or advice to members, officers
or employees in their capacities as your
representatives.  The provision of such
information or advice does not create an attorney-
client relationship between us and the
individual(s) other than in their representative
capacities.

In the event that you are acquired or are
otherwise subject to a change in control (including
by a person or group becoming a controlling
affiliate of yours) after the inception of the
Engagement, it is understood that the Firm does
not represent the acquiring entity or such
controlling affiliate or establish an attorney-client
relationship with such entities or affiliates.

The Firm's representation of an association or
trade group does not create an attorney-client
relationship with any of the association or trade
group's constituents, members, affiliates or
participants individually.

### 3 .    COUNSEL GUIDELINES

You agree and acknowledge that the Engagement
Terms shall control over terms contained in your
outside counsel guidelines or similar instructions
supplied by you at any time.

### 4 .    CONFLICTS OF INTEREST

The Firm and its affiliated entities represent clients
in a broad range of industries and in a wide
variety of legal matters, nationally and
internationally.  Absent an effective conflict of
interest waiver, conflicts of interest could arise
that could deprive you or other clients of the right
to select the Firm as their counsel, and preclude
us from representing you or other clients in
ongoing or future matters.  In undertaking the



Engagement, the Firm wants to be fair to you and to our other clients. Accordingly, you acknowledge and agree that the Firm and its affiliated entities may, now or in the future, represent other persons or entities on matters adverse to you or any of your current or future affiliates, including, without limitation, in commercial transactions, auctions, mergers and acquisitions, intellectual property matters, restructuring or bankruptcy matters, litigation, arbitration or other dispute resolution procedure, other than those for which the Firm had been or is then engaged by you. Such matters shall be referred to as "Allowed Adverse Representation." You understand that the foregoing examples are illustrative, not exhaustive.

You agree that you will not, for yourself, or any other entity or person, assert the Firm's representation of you or any of its current or future affiliates as a basis for disqualifying the Firm from representing another party in an Allowed Adverse Representation. You further agree that an Allowed Adverse Representation does not breach any duty that the Firm owes to you or any of your affiliates. You may consult with independent counsel regarding this section before agreeing to it.

You agree that this section does not expand the scope of the Engagement to encompass your affiliates unless expressly agreed by the Firm.

## 5.     CONFIDENTIALITY

The Firm has a professional obligation not to disclose your confidential information or to use it for another party's benefit without your consent. These obligations are subject to certain exceptions, including laws and regulations relating to money laundering and terrorist financing. Under certain circumstances, the Firm may be obligated to disclose information to governmental authorities, and we may be prohibited from informing you that disclosure has been made or the reasons for such disclosure. We may have to cease work for you for a period of time and not be able to inform you of the reason. Provided that the Firm acts consistent with its duty of confidentiality, subject to the exceptions noted in this section and those set forth in the applicable Rules of Professional Conduct, you agree that you shall not assert that the Firm's possession of such

confidential information is a basis for disqualifying the Firm from representing another of its clients in any matter in which you have an interest, or that it constitutes a breach of any duty owed by the Firm, even though the information may relate to a matter in which the Firm is representing another client or may be known to someone at the Firm working on the matter.

If the Firm receives a subpoena or request for information that is within our custody or control, or the custody or control of our agents or representatives, we will, to the extent permitted by applicable law, advise you before responding so that you have the opportunity to intervene or assert any objections. Should you object to the production of such information, the Firm may provide such information only to the extent authorized by you or required by a court or other governmental body of competent jurisdiction. You agree to pay the Firm for services rendered and charges and disbursements incurred in responding to any such request for information at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

You consent and agree that the Firm may disclose the fact of the Engagement and related general information to the extent that such disclosure does not convey any confidential and or non-public information and is not adverse to your interests.

## 6.     ARBITRATION OF DISPUTES

Any dispute or claim between you and the Firm arising out of or relating to the Engagement Terms or their breach, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud and disputes regarding attorney fees and/or costs charged under this Agreement (except to the extent provided below) shall be submitted to binding arbitration before the American Arbitration Association, and subject to the Commercial Arbitration Rules. This provision shall not apply to any ethics or disciplinary proceedings against the Firm. The parties shall bear their own legal fees and costs for all claims.

The existence and content of the arbitration proceedings, as well as any arbitration rulings and awards, shall be maintained by the parties as strictly confidential, except (i) to the extent that



disclosure is required by a court or other governmental body of competent jurisdiction; (ii) to the extent necessary to confirm, vacate, challenge, or enforce the award in bona fide legal proceedings before a court of competent jurisdiction or other judicial authority; (iii) for disclosure in confidence to the parties' respective attorneys, tax advisors, insurance agents or companies, senior management, and other agents or employees on a need to know basis; or (iv) with the written consent of all parties.

You acknowledge that by agreeing to this Arbitration provision, you are giving up the right to litigate claims against the Firm, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision.  You acknowledge that you have read and understand this arbitration provision, and that you voluntarily agree to binding arbitration.

**NOTE: You are entitled to consult an independent lawyer to review this arbitration provision before agreeing to it.  By accepting these Engagement Terms, you acknowledge that you have consulted with independent counsel, or if not, that you had the opportunity to do so.**

### 7 .    CLIENT IDENTIFICATION

Many jurisdictions have adopted or are in the process of changing or creating anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws.  As part of the Firm's responsibility for compliance with such laws, rules, regulations or policies, the Firm is obliged to take detailed steps to verify the identity of our clients and sources of payment.  *Accordingly*, prior to commencement of work, the Firm will have already requested, or will be requesting shortly, that you provide us with required identification documents.  A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the matter.  It is also necessary for us to reserve the right to request additional information believed necessary, advisable or appropriate to verify identity and/or to ensure the Firm's compliance with applicable laws, rules, regulations, best

practices and anti-money laundering matters from time to time.

### 8 .    DATA TRANSFER CONSENT

Due to legal obligations applicable to the Firm or our affiliated offices, and to efficiently maintain information provided to us, the Firm may transfer some or all of any personal or other data and information ("Data") that you provide to the Firm to one or more DLA Piper offices in other countries that may not be subject to data protection laws similar to those in the jurisdiction in which the Data is first received.  By signing this letter, you give us specific consent to obtain and transfer such Data, and confirm that you have obtained and grant us all required consents to allow the Firm to do so.

### 9 .    ONLINE COLLABORATION PLATFORMS

With your consent, the Firm may employ web-based tools (eRooms) and cloud-based collaboration platforms (HighQ) to facilitate sharing of electronic data with you and others, by invitation. If you consent to the use of an online collaboration platform, the Firm will charge you a one-time fee of $400 for administration and storage.

### 10 .    TERMINATION

Either of us may terminate the Firm's representation of you in a particular ongoing matter, or in the Engagement, at any time.  Unless otherwise terminated by you or the Firm, our representation of you with respect to a particular matter will terminate upon conclusion of the Firm's active involvement in the matter (even if the Firm continues active involvement in other matters on your behalf).  Upon termination, we will have no further duty to inform you of future developments or changes in law as may be relevant to such matter.  Further, unless you and the Firm mutually agree in writing to the contrary, we will have no obligation to monitor renewal, expiration, or notice dates or similar deadlines which may arise from the matters for which we had been retained.

If, at any time, our engagement is limited to a specific matter, and at the time such matter is completed, we are not representing you in any



other matters, our attorney-client relationship will be deemed terminated whether or not we send you a letter to confirm such termination. Thereafter, if you and the Firm mutually agree to engage on a matter or matters, these Terms of Service (and any applicable Engagement Letter) would then become effective.

If permission for withdrawal is required by a court, we shall apply promptly for such permission and termination shall coincide with the court order for withdrawal.

## 11 . CLIENT FILES AND RECORDS RETENTION/DISPOSAL

The Firm maintains files relating to the matter(s) in which we represent you. These files may contain materials received from you. They may also include other materials not received from you, but which are reasonably necessary to our representation of you. Such other materials may include, for instance, correspondence with you or third-parties on your behalf, executed copies of agreements, filings, pleadings, deposition transcripts, and closing binders. Together, these materials are your Client File. The Client File is your property. The Client File does not include materials or documents that include our attorney work product, mental impressions, notes, drafts, or internal firm correspondence or emails (together, "Work Product"). You agree that Work Product shall be and remain our property and shall not be considered part of your Client File.

At the conclusion of a matter (which is defined as the time that our work on any matter subject to the Engagement Terms has been completed), you have the right to take possession of your Client File (not including Work Product) or direct us to dispose of the files. We will be entitled to make and retain copies of all or part of the Client File, at our own discretion and expense. Furthermore, at the conclusion of a matter, we may request that you consent to the return of documents, data or other property received from you or from third parties. You agree to cooperate in the return by the Firm of any such materials.

If you do not take possession of or direct us to dispose of the Client File at the conclusion of a matter, the Firm will store the Client File at its expense for a period of seven (7) years following

the conclusion of the matter. You agree that we may dispose of the Client File following the end of that seven (7) year period, consistent with maintaining confidentiality, without further notice or obligation to you. Our retention of the Client File shall not constitute or be deemed to indicate the existence of an ongoing attorney-client relationship.

## 12 . CONSULTATION WITH COUNSEL

We may consult with our own counsel, whether outside counsel or attorneys inside the Firm who do not perform work for you on the matter, regarding our representation of you. These consultations may be on our own behalf and will not be charged to you. To the extent that we are addressing the Firm's own rights or responsibilities regarding the matter, a conflict of interest might be deemed to exist between the Firm and you. You hereby consent to such consultation, and waive any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent you or from acting on our own behalf, even if doing so might be deemed adverse to your interests. You acknowledge that the communications related to the consultations are protected by the Firm's own attorney-client privilege from disclosure to you.

## 13 . SEVERABILITY

If any provision of the Engagement Terms is held invalid or unenforceable by any court or arbitrator of competent jurisdiction, the other provisions of the Engagement Terms shall remain in full force and effect. Any provision of the Engagement Terms held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. Our waiver of any of the Engagement Terms shall not be deemed a further or continuing waiver of such term or any other term, unless specifically stated.